UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

Wilmington Trust Company, as Trustee by GEMB
LENDING INC. f/k/a E*Trade Consumer Finance
Corporation,

                               Plaintiff,

             - against -

M/V MISS B. HAVEN V, her engines, tackle,
apparel, appurtenances, etc., having Official No.
1167951, and Hull Serial No. CDRD0117H304, *in
rem,* and CHARLES M. PATEMAN, *in personam*,

                              Defendant.
------------------------------------------------------------X

09 CIV. 8438
CASE NO.

JUDGE ROBINSON

IN ADMIRALTY

### COMPLAINT TO FORECLOSE A PREFERRED SHIP'S MORTGAGE AND FOR DAMAGES

THE COMPLAINT of Wilmington Trust Company, as Trustee by GEMB Lending Inc. f/k/a E*Trade Consumer Finance Corporation (hereinafter referred to as "Wilmington") against the M/V MISS B HAVEN V, and her engines, tackle, apparel, etc. *in rem,* and Charles M. Pateman, *in personam* (hereinafter referred to as "Defendant"), in a cause of enforcement of a First Preferred Ship's Mortgage and of Contracts, civil and maritime, alleges upon information and belief:

    1.    This Court has jurisdiction of this matter, pursuant to 28 U.S.C. Section 1333 and 46 U.S.C. Section 31325.

    2.    This is an Admiralty and Maritime claim within the meaning of Fed. R. Civ. P. 9(h).

3. At all times relevant hereto, Wilmington was and still is a financial institution, organized and existing under the laws of the United States of America.

4. At times relevant hereto, the Defendant, M/V MISS B HAVEN V is and was a vessel documented under the laws of the United States in the name of Charles M. Pateman.

5. Upon information and belief, the Defendant vessel is presently berthed within the Southern District of New York.

6. Upon information and belief, the Defendant Charles M. Pateman is a resident of Westchester County, New York, and is sui juris.

7. On or about February 10, 2005, Defendant Charles M. Pateman purchased a certain 2004 C460 Carver Boat Cor Hull Serial No. CDRD0117H304, said Vessel being named MISS B. HAVEN V, and having Official No. 1167951 (hereinafter sometimes referred to as the "Vessel").

8. In connection with the aforesaid purchase, the Defendant Charles M. Pateman executed a Retail Installment Contract and Security Agreement on February 10, 2005, wherein said parties granted a security interest in and to aforesaid Vessel, her engines, tackle, appurtenances and the like to Staten Island Boat Sales, Inc., which was then assigned to E*Trade Consumer Finance Corporation (now known as GEMB Lending Inc.) on February 10, 2005. (A true and correct copy of the Retail Installment Contract and Security Agreement (the "Note") is attached hereto and incorporated herein as **EXHIBIT "A".**)

9. On or about February 10, 2005, the Note and all related documents and interests were assigned by Staten Island Boat Sales, Inc. to E*Trade Consumer

Finance Corporation (now known as GEMB Lending Inc.). (A copy of the Assignment is annexed as part of the Note which is **EXHIBIT "A"** hereto).

10. In furtherance of the perfection of the security interest in and to the Vessel, a First Preferred Ship's Mortgage was executed by Patricia A. Stellate, attorney in fact for Charles M. Pateman, in favor of Wilmington Trust Company, as Trustee and was recorded on or about February 28, 2005, in Batch Number 344561, Document ID No. 3304597. (A true copy of the First Preferred Ship's Mortgage (the "Mortgage") is attached hereto and incorporated herein as **EXHIBIT "B"**.) (See Power of Attorney attached hereto and incorporated herein as **EXHIBIT "C"**).

11. Plaintiff presently owns and holds the Contract and the Mortgage. The original principal amount of said Contract and Mortgage was Four Hundred Eighty Thousand Three Hundred Seventy-Five and 00/100 Dollars ($480,375.00), plus interest.

## COUNT I

12. Plaintiff, Wilmington Trust Company, As Trustee, repeats and realleges each and every allegation contained in paragraphs "1" through "11", as if set forth at length herein.

13. Defendant Charles M. Pateman defaulted upon his obligations pursuant to the Retail Installment Contract and First Preferred Ship's Mortgage by failing to make the payment due on or about March 24, 2009, and all subsequent payments.

14. Plaintiff Wilmington has elected, under the terms of the Note and Mortgage, to accelerate the remaining balance and to declare said amount due and payable in full since Defendant Charles M. Pateman has suffered and permitted the Defendant Vessel to be run into debt.

15. Despite numerous demands for payment, no payment has been received.

16. All prerequisites to the maintenance of this action have been waived, performed or complied with.

17. The remaining principal balance and interest due the Plaintiff upon said obligation is $426,803.45 as of June 5, 2009, together with currently accruing interest at the rate of $46.29 per diem, and an amount due for attorney's fees, reasonable court costs, and repossession and any and all other costs relating to this foreclosure action all pursuant to the Note and Mortgage.

18. Plaintiff is obligated to pay its attorneys, Roe Taroff Taitz & Portman, LLP, a reasonable fee.

**WHEREFORE**, judgment is demanded in favor of Plaintiff Wilmington Trust Company, as Trustee by GEMB Lending Inc., f/k/a E*Trade Consumer Finance Corporation, against the Defendant Vessel MISS B HAVEN V, her engines, tackle, appurtenances, etc., for foreclosure of the Preferred Ship's Mortgage held by the Plaintiff against said Vessel; and further that said Vessel be sold as provided by law, free and clear of its liens and proceeds of said sale first

applied to the costs of this action, costs of repossession and attorney's fees, and then to the principal and interest balance due, all according to the terms of the Note and Mortgage, as well as such other relief as may be just and appropriate under the circumstances.

## COUNT II

19.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "18" as if set forth at length herein.

20.     Pursuant to the terms of the Note and Mortgage, Defendant Charles M. Pateman obligated himself to pay the sum of $480,375.00 plus interest, for and on behalf of and as consideration for the purchase of the Vessel, M/V MISS B HAVEN V, her engines, tackle, appurtenances, etc.

21.     The payment due and owing on or about March 24, 2009, has not been made, nor have subsequent payments been made, and the full balance owing thereon has been accelerated and declared due and owing by the Plaintiff pursuant to the terms and conditions of the Note and Mortgage.

21.     All prerequisites to the maintenance of this action have been waived, performed or complied with.

22.     The remaining principal balance due the Plaintiff upon said obligation, is $426,803.45 as of June 5, 2009, including interest, together with currently accruing interest at the rate of $46.29 per diem, reasonable attorney's fees, court costs and any and all other costs relating to this foreclosure action and/or repossession all pursuant to the terms of the Note and Mortgage.

23. Plaintiff has retained the law firm of Roe Taroff Taitz & Portman, LLP, and is obligated to pay them reasonable attorney's fees.

**WHEREFORE**, judgment is demanded in favor of the Plaintiff Wilmington Trust Company, as Trustee by GEMB Lending Inc., f/k/a E*Trade Consumer Finance Corporation, against the Defendant Charles M. Pateman for the principal amount of $426,803.45, including interest; plus court costs; reasonable attorney's fee, and any and all costs relating to the foreclosure and/or repossession and/or default of the Note and Mortgage, all pursuant to the terms of the Note and Mortgage, as well as any deficiency judgment and any and all other relief that this Court deems just and appropriate under the circumstances.

Dated: Patchogue, New York
September 30, 2009

Yours, etc.

ROE TAROFF TAITZ & PORTMAN, L.L.P.
Attorneys for Plaintiff WILMINGTON TRUST
COMPANY, AS TRUSTEE BY GEMB LENDING
INC. F/K/A E*TRADE CONSUMER FINANCE
CORPORATION
31 Oak Street, P.O. Box 352
Patchogue, New York 11772-0352
(631) 475-4400

By: _____
Steven Taitz (st9563)

T:\AM\GEMB v. Pateman - 56294RLST\PLEA\Revised Complaint.WPD



# EXHIBIT "A"

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT | Seller | Buyer |
|---|---|---|
| No. 02698<br>Date 02/10/05 | Staten Island Boat Sales, Inc.<br>222 Mansion Ave<br>Staten Island, NY 10308<br>"We" and "us" mean the Seller above, its successors and assigns. | Charles M Pateman<br>65 S. Broadway # 101<br>Tarrytown, NY 10591<br>"You" and "your" mean each Buyer above, and each guarantor, jointly and individually. |

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the goods (Goods) and services described below. The Goods are sold in their present condition, together with the usual accessories and attachments.

| Description of Goods or Services Purchased | Serial or Unit No. | Motor or Cabinet No. | Price of Each Unit |
|---|---|---|---|
| 2004 C460 CARVER BOAT COR | CDRD0117H304 | 2071171235/2071171344 | |

Description of Other Collateral (Not household goods)    N/A

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Goods purchased and any other collateral described above, and all accessions, attachments, accessories, and equipment placed in or on the Goods or other collateral, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ __480,375.00__ , plus credit service charges accruing on the unpaid balance at the rate of __3.99__ % per year from today's date until maturity. Credit service charges accrue on a __365__ day basis. After maturity, or after you default and we demand payment, we will earn finance charges on the unpaid balance at __3.99__ % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: ☒ AN INSTALLMENT OF $ __2,908.44__ WILL BE DUE ON __03/12/05__ . ☐ LARGER INSTALLMENTS WILL BE DUE AS FOLLOWS: _____ .

☐ **MINIMUM CREDIT SERVICE CHARGE:** You agree to pay a minimum credit service charge of $ _____ if you pay this Contract in full before we have earned that much in credit service charges.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $ 68,412.50 |
|---|---|---|---|---|
| 3.99 % | $ 217,650.60 | $ 480,375.00 | $ 698,025.60 | $ 766,438.10 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | 2,908.44 | MONTHLY BEGINNING 03/12/05 UNTIL PAID IN FULL |

**Security:** You are giving a security interest in    ☐ (description of other property)
☒ the Goods purchased.
☒ **Late Charge:** If a payment is more than __10__ days late, you will be charged __The greater of $5.00 or 5% of the Payment__

**Prepayment:** If you pay off this Contract early, you ☐ may ☒ will not have to pay a minimum credit service charge.
**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign

**ITEMIZATION OF AMOUNT FINANCED**
Goods and/or Services Price    $ 548,787.50
                                  38,287.50

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Goods and described services for the Cash Sale Price or the Total Sale Price. The Total Sale Price is the total price of the Goods and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any credit service charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a credit service charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**DOWN PAYMENT:** You agree to pay, or apply to the Cash Sale price, on or before today's date, any Cash Down Payment, Manufacturer's Rebate and Net Trade-In value described in the Itemization of Amount Financed on page 1. You agree to pay any Deferred Down Payment described in the Itemization of Amount Financed according to the Payment Schedule shown on page 1.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. If you prepay in full or if you default and we demand payment of the unpaid balance, you may be entitled to a refund credit of the unearned portion of the credit service charge. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:
  A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Goods.
  B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
  C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
  D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
  E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent. You will not permit the Property to become attached to any real estate without first providing us an opportunity to preserve our first priority status.
  F. You will pay all taxes and assessments on the Property as they become due.

finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
  C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
  D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
  E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
  A. You must pay this Contract even if someone else has also signed it.
  B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
  C. We may release any security and you will still be obligated to pay this Contract.
  D. If we give up any of our rights, it will not affect your duty to pay this Contract.
  E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice

G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
A. You fail to perform any obligation that you have undertaken in this Contract.
B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, fees for repossession, repair, storage and sale of the Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:
A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, credit service charges and all other agreed charges. If, upon your default, we have repossessed the Property, our right to accelerate is subject to your right to redeem the Property as provided by law.
B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn

that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

---
**THIRD PARTY AGREEMENT**
By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

Signature _____ Date _____
---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**ASSIGNMENT BY SELLER**

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:
A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable federal and state laws and regulations.
E. This Contract is valid and enforceable in accordance with its terms.
F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Goods have been delivered to the Buyer in good condition and have been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

© 1982, 1995 Bankers Systems, Inc., St. Cloud, MN Form RS-SI-GS-NY 7/31/98 (page 2 of 2)



EXHIBIT "B"

```
9 6512865540           ge vault                                    11:25:10   06-04-2009    3/6
Batch Number: 344561
Document ID: 3304597
User ID: SCANNER6                                                  E✲TRADE
Filed Date/Time: 28-FEB-2005 08:15 AM                              FINANCIAL
```

P MORTGAGE

This is a First Preferred Ship Mortgage ("Mortgage") dated  2/14/2005                              acctacqrss
$  480,375.00        on the vessel ("Vessel") known as "  MISS B. HAVEN V                 in the amount of
hull/official number   CDRD0117H304

1167951

THE AMOUNT OF THIS MORTGAGE, as required to be shown by Chapter 313 of Title 46 of the United States Code (Commercial Instruments and Maritime Liens), is $  480,375.00    . This Mortgage also secures repayment of simple interest as it accrues, subject to appropriate prepayment credit, as well as performance of the representations, warranties and promises contained in this Mortgage and the Contract referred to below.

Mortgagor:     Charles M. Pateman  100%
               Sole owner

The sole owner(s)/managing owner of the Vessel, residing at:    65 South Broadway
                                                                Suite 101
                                                                Tarrytown, NY 10591

Mortgagee:    Wilmington Trust Company, as Trustee  – 100%
              (Servicer: E*TRADE Consumer Finance Corporation
              3353 Michelson Drive, 2nd Floor, Irvine, CA 92612

The Mortgagee's address is: 1100 N. Market Street, Rodney Square North, Wilmington, Delaware 19890

The words "I", "me" and "my" mean everyone who grants this Mortgage as Mortgagor and the personal representatives, successors and assigns of Mortgagor. The words "you" and "your" mean the Mortgagee and anyone who has Mortgagee's rights under this Mortgage. If this Mortgage is given by a corporation, partnership, limited liability company, association or trust, the words "it" and "its" may also mean such entity.

MULTIPLE MORTGAGORS. If more than one of us is signing this Mortgage as Mortgagor, each of us is responsible to pay the entire amount owing and do everything required of Mortgagor, unless specifically stated otherwise below. You may sue one Mortgagor without joining any Co-Mortgagor.

MORTGAGE OBLIGATION.   This Mortgage secures my obligations ("Obligation") now due or which may become due in the future under this Mortgage and under a retail sales contract / disclosure and security agreement ("Contract") executed by me and now held by E*TRADE Consumer Finance Corporation, dated  2/10/2005      . I am the sole owner of the Vessel.

PROMISE TO PAY. I will pay and perform the Obligation.

MORTGAGE. To secure this Obligation, I mortgage to you the whole of the vessel described above, together with its masts, towers, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, fishing gear, radar and other electronic or other equipment and supplies, and other attachments and accessories, now forming part of the Vessel or used in or on the Vessel or which may become part of the Vessel in the future, whether or not aboard the Vessel, as well as insurance proceeds, warranty rights, and rights arising under contract, all called the "Vessel".

Initials _____    Mortgagor's Initials _____

IMAR 0024-First Preferred Ship Mortgage Rev 10/30/02

VESSEL DOCUMENTATION OFFICE
U.S. COAST GUARD, N.V.D.C.
I hereby certify this to be a true
copy of the records of this office.
_____  4/4/05
Documentation Officer      Date

9 6512865540                ge vault                                                    11:25:31    06-04-2009       4/6

## ADDITIONAL TERMS AND CONDITIONS

1. **CITIZENSHIP.** I am, and shall continue to be, a citizen of the United States until this Mortgage is fully paid.

2. **COMPLIANCE WITH LAWS.** This Vessel is documented in my name under the laws of the United States. I own the Vessel and shall continue to be entitled to own, operate and document the Vessel under U.S. Law. If this Mortgage is given by a corporation, partnership, limited liability company, association or trust, it is duly organized and formed, and is in good standing under the laws of the state of its organization or formation.

3. **SIGNING, AUTHORIZATION AND VALIDITY.** If this Mortgage is given by a corporation, partnership, limited liability company, association or trust, its board of directors, partners, members or trustees, as the case may be, have authorized and directed execution and delivery of the Contract and this Mortgage, and the performance of the Obligation thereunder. The Contract and this Mortgage are legal, valid, and binding in accordance with their terms.

4. **TITLE WARRANTY.** I lawfully own and have possession of the Vessel free from all liens and encumbrances except for the lien of this Mortgage. I warrant clear title to the Vessel, and will be responsible for your expenses or losses if anyone else successfully claims an interest in the Vessel or any part of it.

5. **RISK OF LOSS.** Damage, destruction or other loss of the Vessel will not release me from my obligations to you under this Mortgage and the Contract. I will let you know as soon as I can if the Vessel becomes damaged or destroyed or disappears.

6. **INSURANCE AND NOTICE OF LOSS.** Until I have paid the Obligation in full, I will insure the Vessel at all times for its full insurable value (what it is actually worth, unless you require replacement cost) up to the amount I owe you under this Mortgage. I will obtain insurance against fire, theft, collision, liability to others, damage caused by water and weather conditions, and such other hazards as you may reasonably ask me to cover. The insurance company must be reasonably acceptable to you. Such insurance must protect you as well as me. The insurance must be written for at least one (1) year at a time, with thirty (30) days advance notice to you of any change. I must pay the premium in advance at the beginning of each policy year. I must give you a bill from the insurance company or its agent or a copy of the declarations sheet of the policy for the new period showing the dollar limits and premiums marked "Premium Paid." I authorize the insurance company to pay any proceeds to you. You may use the proceeds of the insurance either to repair the Vessel or make payments under this Mortgage. You may sign any proof of loss and endorse any check draft or other form of payment issued by the insurance company or its agent as a loss payment. If I do not have the insurance either at the closing or my purchase of the Vessel or at any time after closing, you may buy insurance to protect yourself and me, or yourself only, and I will repay the premiums at your request with interest at the Annual Percentage Rate shown on the Contract. I will make sure that nothing is done that will cause the Vessel to be uninsured.

7. **USE OF VESSEL.** I will not sell the Vessel, pledge it as security for another loan, give it away, lease it or charter it without your written permission. I will not use the Vessel to carry passengers for hire, permit its use for any illegal purposes or let anyone seize the Vessel. I will not allow anyone to put a lien on it, except for this Mortgage and any other security interest or lien to you and crew's wages and dockage kept current, or, in an emergency, salvage (anyone who lowers or raises a vessel has a maritime lien on the Vessel which is called a "salvage lien"). If I take the Vessel to another country, I will comply with the laws of such country and with any treaty between the United States and such country. I will not use the Vessel as my principal dwelling.

8. **LOCATION OF VESSEL.** I will not, without your prior written approval, remove the Vessel from the place where it is kept shown on the Borrower's Acceptance of Vessel other than for voyages with the intent or returning. I will inform you of any different winter storage location. I will not abandon the Vessel.

9. **DISPLAY OR MORTGAGE ON VESSEL.** I will prominently display a Notice of this Mortgage in the pilot house, if any, chart room or master's cabin. I will keep a copy of this Mortgage with the ship's papers, and will show it to all persons having business with the Vessel, and to you on demand.

10. **BILLS AND TAXES.** I shall pay when due any crew wages, salvage charges, repair bills, storage bills, taxes, fines or other charges on the Vessel. You may pay any of these bills, if I do not. I will repay you on demand, with interest at the Annual Percentage Rate shown in the Contract.

11. **CARE OF THE VESSEL.** I will keep the Vessel in seaworthy condition and repair.

12. **NOTICE OF SEIZURE.** I will notify you immediately if the Vessel is arrested, libeled, attached, detained, seized or levied upon or taken into custody by and court or other authority. I authorize you or your agents in my name to receive or take possession of the Vessel and defend any action and/or discharge any lien, at my expense. Nevertheless, I will immediately take steps to have the Vessel released.

13. **INSPECTION OF VESSEL AND BOOKS.** I will at all times let you inspect the Vessel and its cargoes and papers and examine my related accounts and records; and I shall tell you quarterly and, if you request, monthly, that all wages and all other claims which might have created a lien on the Vessel have been paid.

14. **FURTHER ASSURANCES.** From time to time, I shall sign and deliver to you any documents and assurances that you may require to maintain priority of this Mortgage and to help you carry out a resale of the Vessel in the event it becomes necessary for you to repossess it. If this Mortgage is given by a business entity, I will give you such annual and other periodic financial reports as you may reasonably request.

15. **LATE CHARGES AND ATTORNEY'S FEES.** I agree to pay any late charges that become due under the Contract secured by this Mortgage, and attorney's fees and court costs as allowed in the Contract, if you seek to foreclose this Mortgage.

16. **DEFAULT.** I will be in default ("Default") (a) if I fail to make any payment when due, or break any other promise in this Mortgage, the Contract, or any related document; (b) if I make a false or misleading statement about any material fact in this Mortgage, the Contract, the application for credit approval or any related document or report provided to you; (c) if any representation or warranty I have made is or becomes untrue, or is unfulfilled; (d) if I die; (e) if I become insolvent; (f) if I become the subject of any proceeding under any bankruptcy, insolvency or similar law; (g) if the Vessel loses its value other than through normal wear and tear; (h) if my ability to make timely payments is impaired; (i) if a receiver, trustee, or liquidator is appointed for me; (j) if the Vessel is libeled, arrested, attached, detained, repossessed, requisitioned, seized, levied upon or taken into custody; (k) if any other default occurs under the Contract, this Mortgage, or any related document; (l) or if anything else happens that you in good faith and with reasonable cause believe may endanger my ability to perform the Obligation.

IMAR 0024-First Preferred Ship Mortgage Rev 10/30/02

9 6512865540          ge vault                                              11:26:05  06-04-2009    5/6

Mortgagor's Initials _____    Mortgagor's Initials _____

If this Mortgage is given by a corporation, partnership, limited liability company, association, or trust, I also shall be in default in (m) I cease doing business as a going concern; (n) I commence liquidation of substantially all of my assets; (o) I dissolve; or (p) any interest is sold, pledged or otherwise transferred other than to an existing shareholder, partner, member or beneficiary.

17. **REMEDIES.** If a default occurs, you may, without demand or notice, accelerate time for payment of any or all of the Obligation; take judicial proceedings against me, the Vessel, any guarantor, or any one or more of us, to foreclose the Mortgage and collect the Obligation; take possession of the Vessel and sell it by nonjudicial means; and enjoy all rights and remedies, judicial or nonjudicial, existing under law, equity, admiralty, the Mortgage, the Contract, or otherwise. All such rights and remedies shall be cumulative. You may exercise any right and remedy, wholly or in part, as often, and in any order as you chose. The exercise of any right or remedy shall not be an election of rights or remedies, or a waiver of the right to exercise any other right or remedy. You may delay or forebear in the exercise of any right or remedy without waiving such right or remedy. I grant you permission to enter any place where the Vessel is stored to repossess it. At your request I will return the Vessel to the place where kept mentioned above. If there is a judicial or nonjudicial foreclosure sale of the Vessel, I will execute any bill of sale for the Vessel that you direct. If there is any property aboard the Vessel which is not subject to the lien of the Mortgage, you may return it to me at my expense if I request such return. If I do not request such property to be returned within thirty (30) days after you notify me at my last known address where the property can be claimed, you may treat such property as abandoned, and deal with it in any way allowed under law.

18. **USE OF VESSEL.** Following a Default, you may (but are not required to) charter, operate or otherwise use the Vessel as you think advisable, being accountable for net profits, if any. You may keep the Vessel free of charge at my premises or elsewhere at my expense. I hereby irrevocably appoint you, and your agents, my true and lawful attorneys-in-fact to make all necessary dispositions in my name, or in yours, of the Vessel following Default.

19. **APPLICATION AND PROCEEDS.** Proceeds from sale of the Vessel shall be applied (a) to the payment of all expenses, including costs of sale, repossession, attorney's fees, court costs, incurred by you for the protection of your rights, and, at your option, payment of liens against the Vessel; (b) to the satisfaction of the Obligation; and (c) to the payment of any surplus to you or to whoever else may be entitled to it. I will be liable for the payment of any deficiency.

20. **RECEIVER.** Following a Default, you may have a receiver appointed for the Vessel and its earnings. Any receiver shall have full rights and powers to use and operate the Vessel and to obtain a court decree ordering and directing the sale or other disposition of the Vessel.

21. **USE OF THE VESSEL BY OWNER.** Until a default occurs, I will be permitted to retain actual possession and use of the Vessel.

22. **TIME IS OF THE ESSENCE.** Time is of the essence. This means that all payments which are required must be made on the day due. There are no grace periods provided in this Mortgage. If I require additional time to make a payment, I understand that I must obtain authorization or approval for making a late payment in writing in advance.

23. **ADDITIONAL SECURITY.** The Mortgage is given as additional security to secure my Obligation.

24. **INVALID PROVISIONS.** If any provision of this Mortgage cannot be enforced, the rest of the Mortgage will stay in effect.

25. **AMENDMENTS.** Any change in the terms of this Mortgage must be made in writing and signed by you and me.

26. **JOINT AND SEVERAL LIABILITY.** If there is more than one Mortgagor, each Mortgagor is jointly and severally liable to perform the Obligation.

ON THE DAY and year written at the beginning of this Mortgage I have signed this Mortgage, or caused this Mortgage to be signed by someone who is properly authorized to do so.

By _____         By _____
   Patricia A. Stellato, Attorney in Fact for: Charles M. Pateman

## NOTARY ACKNOWLEDGMENT

State of __NEW YORK_____    County of __SUFFOLK_____

On __2/14/2005_____ before me, __Patricia A. Serpe, Notary Public__
       Date                                     Name and Title of Officer (e.g., "Jane Doe, Notary Public")

Personally appeared __Patricia A. Stellato_____
                              Name(s) of Signer(s)

__X__ Personally known to me OR ____ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature of Notary Public
Patricia A. Serpe
Notary Public State of NY
Qualified in Suffolk County
ID # 01SE6066184
Commission Expires __11-13-05__

MAR 0024-First Preferred Ship Mortgage Rev 10/30/02



EXHIBIT "C"



specialized yacht services, inc.

## POWER OF ATTORNEY

In the following paragraphs, the words "I", "me", and "my" refer to all parties who sign below.

I, Charles M. Pateman
By executing this Power of Attorney appoint any of the following, Audrey M. Stone
or Patricia A. Stellato   my true and lawful Specially Authorized Agent/Attorney-In-Fact with full right of substitution to act for me and in my name. This authority will be to perform the following acts as if I had performed them myself.

1. **Date, Sign and Deliver Documents.** To date, sign and deliver to the United States Coast Guard, all such documents as are, or may become necessary, specifically in connection with the documentation of the following vessel:

   Year Built  2003/ 2004 model
   Manufacturer  Carver Boat Corporation
   Vessel Name  MISS B. HAVEN V
   Hull # or Official #  CDRD0117H304

2. **Date, Sign and Deliver Documents.** To date, sign and deliver to
   E*Trade Consumer Finance Corporation
   for me, a First Preferred Ship's Mortgage for a Principal Amount of $ 480,375.00 . To perform any and all acts determined to be necessary by my Specially Authorized Agent/Attorney-In-Fact or required by
   E*Trade Consumer Finance Corporation
   or the United States Coast Guard in connection with the execution, delivery, recording and endorsement of the Mortgage.

3. **Acknowledgement, Recording and Endorsement.** To sign, acknowledge, record and deliver any other applications, certifications, and instruments required by the United States or by any jurisdiction where the Vessel is to be registered or kept relating to documentation, registration and security interest or mortgage lien perfection. Further, to apply for replacement Certificate of Documentation, if necessary.

⇒ Please note: You must be a U.S. citizen to execute this form. ⇐

Witness: _____   By: _____
                                       Charles M. Pateman

Witness: _____   By: _____

ACKNOWLEDGEMENT:

State of  NEW YORK
County of  NASSAU

On  2/10/05 .   The person(s) named above acknowledge execution of the foregoing Instrument in their stated capacity(ies) for the purpose therein contained.

_____
Notary Public

Thomas Denimarck Jr.   My Commission Expires:
Notary Public State of New York
No. #01DE6059587
Qualified in Suffolk County
Commission Expires 5/29/07